May it please the Court. Good morning, Your Honors. I'd like to reserve two minutes for rebuttal time. You may do so. Just watch the clock. Thank you, Your Honor. At the heart of this case is a young man with glass-bones disease who will be tortured because of his inability to complete service in the notoriously brutal Syrian military. The Board decision acknowledged Mr. Salti's disease and also acknowledged the fact that he will be jailed upon return to Syria. What the Board took issue with here was whether Mr. Salti's disability established his membership in a particular social group, whether he will suffer disproportionate punishment on account of his disability. The Board decision also miscategorized the routine gruesome torture in Syrian prisons as lawful mistreatment. First, Mr. Salti's disability renders him unable to serve in the Syrian military and establishes his membership in a particular social group of disabled persons who are unable to complete military service. So with respect to the — oh, sorry. You may go ahead, Judge. Sorry. Does the record compel the conclusion that there's a nexus between his physical disability and compulsory military service? In this case, it does, Your Honor. I had thought he testified that the reason he didn't get the exemption for military service because he wasn't a member of a well-connected or well-financed family, something like that. Am I wrong? He did testify to that, Your Honor. But in the same paragraph, he also testified to the fact that the military refused to grant him a waiver because they didn't care about his disability. They are, in effect, penalizing him knowingly. And this knowledge is what's important here. So if a Petitioner seeking asylum gives two reasons for the claim of persecution, one of which doesn't establish a nexus, and the other one that does, we should focus just on the one that does? Your Honor, it has been recognized in this Court that mixed motives are permissible, that you can — that even though there is another motive in Borja v. INS, even though there was another motive for persecution in that case, that involved the NPA in the Philippines, that because there was a motive, that there was a — there was a motive on account of a protected ground, that that was sufficient to establish the nexus. But the nexus is very clear in this case. Because they are knowingly penalizing him for his disability, they are knowingly putting him in a position where he cannot perform, and then torturing him because of it. So is the social group that you're wanting to qualify disabled persons who are disqualified from military service? Disabled persons generally, and alternatively, disabled persons who are unable to complete military service because of their disability, which is the case here. The situation in Mr. Salti's case is akin to the military telling a quadriplegic to rappel down a 500-foot wall and then throwing him in jail and imprisoning him because he can't do it. There, it's not that he refused service because he didn't want to complete service. It is because he's unable to complete service. The Syrian military was aware of this. They ignored his medical documentation. They ignored the obvious appearance of his disease and the fact that he didn't even meet the height and weight requirements for service. Mr. Salti suffers from glass bones disease. His bones did not form properly and are so fragile that they break during the course of everyday activity. Under the American Disabilities Act, this country has recognized that failure to take into account someone's disabilities is discrimination on account of disability, and that's where the nexus is. And in this case you're not suggesting the ADA applies in this context, is it? Certainly, the ADA does not apply to Syrian law. However, the rationale, when you're looking to defining a nexus and seeing if this persecution is on account of his disability, the ADA is relevant. Well, don't we have a pretty strong line of cases which hold that with respect to military conscription, we don't recognize any persecution? That's been sort of excluded from our consideration. Yes, Your Honor, unless the punishment is disproportionate on account of a protected ground. But we've never regarded military conscription as punishment. It's simply part of the civil policies of the host country. And unless there's some other ground, we've generally tended to exclude military service. Have we not? You have, Your Honor, but there have been exceptions. And one of the exceptions, and the exception that applies here, is when the punishment is disproportionate on a protected ground. Mr. Salti will suffer more punishment than the average recruit, or the average prisoner, for that matter, when he's jailed for failing to serve in the military. He is in a far more vulnerable position, and the military and the government are aware of that. But that seems to be a different argument. I don't know if you're leading now into the cat claim, but if somebody avoids military service and then they're put into prison or given whatever sanction the country gives them, we generally don't provide relief. And I thought your cat claim was that if he — because he has not been in military service during this period, if he goes back, he would be put in jail, and that people in jail are tortured. Is that correct? Or is there something specific that ties failure to going to military service to the torture? The cat claim, yes, Your Honor, is based on the punishment he will receive. And in that case, a nexus is not necessary to a protected ground. It's undisputed that he'll be jailed when he's returned to Syria. And gruesome torture does occur in Syrian prisons that rises to the level of torture. What's the best evidence that it is more likely than not that he will be tortured once in prison? Absolutely, Your Honor. The question was, what is the best evidence in the record to support that? That he will be tortured upon return to Syria. Once imprisoned. Once imprisoned. There doesn't seem to be much question that if he returns and they discover that he's there, that he's going to be imprisoned for refusing military service. My question is, what's your best evidence in the record that it's more likely than not that he will be tortured if sent back? There is significant evidence in the record. The Department of State report in 2001, to name one. But there are numerous articles about the torture. The Syrian Human Rights Committee reports about the torture that occurs in Syrian prisons. It is quite gruesome. Syrian prisoner torture is widespread. The Department of State report acknowledges that, and routine, which is also acknowledged. Routine suggests that it's done to everyone. Correct, Your Honor. It is widespread and routine. So it is definitely the best evidence that he will be tortured. Is it necessary to establish your cat claim that the torture once imprisoned would be because of who he is? It is only necessary to show that it is on account of discrimination of any kind or punishment of any kind. And this Court has recognized that in Nourou versus Gonzalez, that failure to serve in the military is enough punishment to support a cat claim. And the torture is gruesome in Syrian military prisons. Prisoners are burned. They are electrocuted. They are strapped into a chair that stretches their spine until it breaks. This is no reasonable fact finder could find that this is anything other than torture. And as this Court yesterday What do we know about the State Department report? I gather the IJ had a 2001 report. Is that correct? That's correct, Your Honor. That's in the record. That is in the record. And you suggest that more recent reports would be more supportive of your view? I they are equally supportive, if not more. The 2007 Department of State report, which is not in the record because it is subsequent, also acknowledges that torture is routine and widespread and continues to be gruesome in Syrian military. Counsel, you have about a minute and a quarter. I will save it for rebuttal. Thank you, Your Honors. We'll hear from the government. May it please the court. I am Edward Wickers and I represent the respondent in this matter. The immigration judge properly concluded that the evidence did not establish petitioner's eligibility for withholding of removal based on his being disabled and unable to perform all military duties or that he was eligible for protection under the Convention Against Torture based on his likelihood of being tortured for not having completed his mandatory military service. The record does not compel the contrary result, and this Court must deny the petition for review. Is there a nexus requirement for CAT? No, Your Honor. There is not. The question by my ---- Well, you just said in your prepared statement there that you read that there's no ---- Can I finish? Yes, Your Honor. Thank you. You just said in your prepared statement that there's no proof that he would be subject to torture if returned on account of his failure to perform military service. That's not required, is it? No, Your Honor. All he has to do is establish that he ---- that it's more likely than not that he would be tortured if returned, correct? Yes, Your Honor. Okay. The basis ---- What's the evidence on that? What we have is the general evidence basically in the reports submit ---- that Petitioner submitted before the immigration ---- The State Department reports. Is that what you mean? Primarily the State Department report, Your Honor. What other reports? Petitioner also submitted reports from Amnesty International and Human Rights Watch. However, the State Department report is the primary one. Now, what we also have in the record on the CAT claim is the response from the Syrian government to Petitioner's cousin's request for an exit visa using Petitioner's It's that they will not grant an exit visa because Petitioner has not yet completed his military service. And I'm going to ---- I intend to refer to that again when addressing the withholding. I thought that everybody agrees that for failure to be in the military, he would be imprisoned. Isn't that essentially what the immigration judge said? The immigration said it's very likely that if ---- basically if viewed as someone who has avoided military service, he would be jailed. Right. It does not appear from that document, Your Honor, that the Syrian government necessarily views him as someone who has evaded military service at this point. Petitioner is still well within the age for individuals who are conscripted into military service. Plus, according to the record, the ordinary time period for military service is after completion of college. After Petitioner completed college and obtained his degree in accounting, he went to the United Arab Emirates. The record also indicates that individuals who are abroad in an Arab country are exempt from military service in Syria upon payment of a fee. Petitioner left from the United Arab Emirates to come to the United States. He has not yet been back into Syria to serve his military service. So I would submit the record does not establish or even or much less compel that Syria would view Petitioner as someone who has evaded service compared to the examples we have of an individual who was outside of Syria for 50 years before returning or other similar circumstances where it was clear that the individual had the Syrian government was aware the individual had no intention of going back. And let's go back to what we're trying to piece together here. The I.J. says it's likely that he would be imprisoned upon going back to Syria, correct? Yes, Your Honor. Okay. And looking solely at the Catt claim, then the I.J. makes this statement. There's no evidence to indicate the government has intentionally created or maintained an environment of punishment for those who violate the conscription laws. But doesn't that sort of beg the question? If he's likely to be imprisoned, then the question is if you're in prison, are the conditions such that they amount to torture? So it seems to me like the I.J. is kind of talking past the issue at hand. And I would appreciate your response to that. Your Honor, first of all, the State Department report reveals that while that torture is a likelihood in prisons, it says it may occur in prisons, it says it's much more likely to occur in the detention centers operated by the security services. There has been no evidence one way or the other on how Petitioner might be detained or jailed when he returns to Syria, assuming that he is detained or jailed in light of the fact that Sirius apparently views him, based on the evidence he submitted, as someone who simply has yet to complete his service. So based on the evidence of the likelihood of where he go – where he might go, there simply is none, Your Honor, and the record does not compel the conclusion that he would go to a facility where it is more likely than not that he would be tortured. Did the I.J. find that he's likely to be imprisoned if returned to Syria? Yes or no? I believe he did, Your Honor. Are you arguing with that? I'm not taking – I'm not saying the immigration judge was way out of line in saying that it's likely he would – there is a likelihood. You've just told us, based on the record that Judge McKeon read, that the I.J. found that he will be imprisoned. He's likely to be imprisoned if returned. And you're now telling us you're not arguing with that, but you are. Your Honor, I submit that there is a – it is – there is a likelihood he would be detained. I would submit that in light of the documentation Petitioner submitted to the immigration judge, that it remains a likelihood and not a certainty, and that – Do you need a certainty for the cat relief? You need at least more likely than not, Your Honor. And I would submit – And more likely than not is a way far lower than a certainty, is it not? Yes, Your Honor. And I would submit that a likelihood is below more likely than not. And Petitioner has a likelihood. The immigration judge, I would submit, Your Honor, found a likelihood that he would be detained. Well, if we're over – if we're here arguing over what likelihood means, then when shouldn't it go back for determination? I mean, that seems to me we get into these, like, appellate standards of review, and sometimes district judges use shorthand for the standard of review. And if there's an ambiguity and we're not sure, then we'll send it back. If we were to accept your position that likelihood doesn't mean more likely than not, or that we don't know what it means, then why wouldn't we send it back? Well, Your Honor, under the substantial evidence standard, the record must compel a conclusion contrary to the IJ's finding. The IJ did not enter a finding that it was more likely than not that he would be jailed, let alone tortured. He said there was a likelihood. Yes, Your Honor, but not that it was more likely than not. He was basing this, I assume, on the 2001 State Department report. Is that correct? Yes, Your Honor. Now, we understand that there are subsequent reports, including one quite recently, which suggests that the probability of torture is even greater. Am I overstating it or not? I'm not aware of it, Your Honor. However, under the Immigration and Nationality Act, this Court is limited to the record that was before the immigration judge and the board. And those reports are not in that record. So we are limited by what was considered, and that's the 2001 State Department report. Did the IJ say there's a likelihood he will be in prison, but it's not more likely than not that he will be? No, he didn't, Your Honor. The answer is no, isn't it? The answer is no, yes, Your Honor. Did he describe or quantify what he meant by likelihood?  And the other thing is that he's not going to be in prison. I see. When I read that, I thought what the IJ was saying was, okay, it's likely he will be imprisoned if returned. What I can't find is that because he's imprisoned, he will be tortured. And quite frankly, counsel, I thought that's what your argument should have focused on. But you seem to want to argue with the IJ's finding about likelihood. No, Your Honor. I was attempting, and I apologize if I gave that impression. I was attempting to illustrate how the record does not even compel the result that it's more likely than not he would go to prison. It certainly does not compel the result that it's more likely than not he would be tortured. And looking at the withholding claim, there has been no evidence submitted showing that Petitioner would be unable to perform all military service or that Petitioner would be required to perform the ordinary military duties. There has been no evidence showing that there has been that a full medical evaluation reveals that Petitioner is completely unable to perform any duties in the military or that there are services such as these duties as an accountant that Petitioner is able to perform that he would be able to perform. And based on that shortcoming, the record does not compel the conclusion that Petitioner is eligible for withholding relief. Unless there are any further questions, Your Honor, if I may conclude. Thank you, counsel. Ms. Miller, you have some reserve time. Your Honor, to be specific, the Court said, I do not doubt that he will be jailed. Upon return to Syria. That would be the case. You're suggesting that is enough standing by itself, that that establishes the high probability or more likely than not? In the decision, that that establishes what the Court – that the Court is saying it's more likely than not. The Court said he doesn't even have a doubt. What establishes the probability is the documentation that was submitted. And it was not just the Department of State report. It was significant documentation. And, Your Honors, you have the record from the Syrian Human Rights Committee and the STEAM International, numerous articles on people who were – who had been abroad for many, many years and were deported back to Syria and jailed immediately for failure to submit – to serve their compulsory military service. There was a very famous case. Maher Arrar, who became a Canadian citizen and had not been in Syria for many, many years, decades, was returned to Syria and was tortured for failure to complete his military service. And that is well-documented in the record. So there's no issue that – there's no question that he will be – What's the best connection to Maher Arrar in this case, to the extent that there is something that would focus on Mr. Salte specifically? What is it that you argue that he would be treated no differently than this other person who indeed was tortured? The fact that there are many people who are returned to Syria and are jailed for failure to complete military service. I believe that is well-documented in the record. And that he – he applied for a waiver three times. He didn't just leave Syria without ever applying. He came to the military's attention three times. And each time, he presented medical documentation. And he – the – his disease is obvious. His bones did not form correctly. He has the body of a 14-year-old boy, and he's a grown man. So he clearly came to their attention. This isn't the case of someone who just fled before they were eligible for military service. So he is definitely in their records. And the fact that his cousin did apply for an exit visa saying that he was him, and they noted that he did not, in fact, serve his military service. Thank you, Counsel. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision. And we will hear argument next in Flores v. Stewart.
judges: O'scannlain, Hawkins, McKeown